454 So.2d 910 (1984)
Jackie Lee PARKER
v.
STATE of Mississippi.
No. 54193.
Supreme Court of Mississippi.
July 18, 1984.
Robert P. Shepard, Murphy & Shepard, A.M. Murphy, Lucedale, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
PATTERSON, Chief Justice, for the Court:
Jackie Lee Parker was convicted of the murder of Randy Tanner and sentenced to life imprisonment by the Circuit Court of George County. Parker appeals and assigns a number of errors believed to have been made by the trial court which require reversal. We are of the opinion we need address only one of such assignments as it is dispositive of the case.
The critical issue before us is whether the lower court erred in refusing to recess the trial late in the afternoon of the second day when the defense attorneys moved for a recess until the following day.
Jackie Lee Parker and Larry Lumpkin drove to the residence of Randy Tanner about 10:00 p.m. on the 17th day of May, 1981. Parker was incensed because Tanner had stolen some marijuana from him in Mobile County, Alabama. After reaching Tanner's residence, they sounded the horn of their truck and saw someone exit from the rear of the house and approach the truck from the side of the building. Randy Tanner was met by Larry Lumpkin who inquired whether he had any "pot" for sale, to which Tanner replied that he did not. Words were exchanged between the two and Lumpkin knocked Tanner to the ground. Tanner regained his feet and reached for a weapon hidden near the house. He was then engaged by Jackie Parker who knocked Tanner to the ground and took the gun from him. Tanner scrambled to his feet and ran toward the woods to the rear of the house. Parker followed with the shotgun he had taken from Tanner for at least 100 yards and when no more than 20 or 30 feet from Tanner fired three times. According to Parker, he was firing at the horizon above a line of trees some distance ahead of Tanner in order to "scare" him. Parker testified he did not see Tanner fall and believed the victim continued running into the woods. Parker and Lumpkin then left the scene.
Randy Tanner's brother, James Tanner, heard the shots and with his brother-in-law searched for Randy when he did not respond to their calls. They found him near a trail in the edge of the woods mortally wounded. The sheriff and an ambulance were summoned; however, Tanner died three days later from a buckshot pellet *911 which had entered the back of his head and lodged at the front of his cranium after doing extensive and fatal damage to the brain. It is noteworthy that another pellet entered the left posterior deltoid area and exited on the anterior side. Twenty-two days later Parker turned himself into the custody of the sheriff of George County and was later indicted for murder.
The trial began on Monday, January 25, and continued through the day. The following day trial began at 12:15 p.m., and continued until approximately 5:00 p.m., when the state rested its case in chief. The defendant's attorneys then moved for a recess until the following morning because they were exhausted from trying a lunacy proceeding, at the request of another judge, as well as this case in the same day, thereby necessarily being engaged in trial since 9:00 a.m. that morning. It was also urged that the defendant was exhausted and should not be subjected to direct and cross-examination at such a late hour. This motion was overruled; subsequently, the defense motion for a directed verdict and a mistrial was overruled and the defense began its case in chief.
The defense renewed its motion for a recess at 5:50 p.m. The defense attorneys stated they would call an expert witness who would take about one hour for both sides to conduct their examinations. Additionally they were aware, as was the court, that once they rested there was the possibility of rebuttal witnesses being called as well as time required for presenting instructions and summations to the jury. The trial court again denied the motion for a recess, whereupon the defendant took the stand, and the trial continued.
A defense motion for a recess was renewed at 8:21 p.m., and was once again denied. Finally, at 10:30 p.m., after ruling on the jury instructions, the court recessed until the following day, when final arguments were to be made before the case was submitted to the jury for its verdict.
In oral argument before this Court, defense counsel contended the trial court did not grant a recess for dinner. Believing this statement to have been inadvertent we have reviewed the record on this point and can neither corroborate nor disprove it. We do find a request for a dinner break was made with the following response:
BY MR. SHEPARD: Your Honor, will there be a break for dinner?
BY THE COURT: Yes, sir.
BY MR. SHEPARD: Could we take it now?
BY THE COURT: The jury has been locked up in that room for about an hour. I think it is better to get them out of that room for a while. We will take a break later. Bring them out.
The matter was not mentioned further, but in either event, we are of the opinion it was basically unfair for the trial court to force the defendant to offer his testimony and that of his witnesses to the jury after a fatiguing day in court and at a time when both counsel and the jury were exhausted.
In Edge v. State, 393 So.2d 1337 (Miss. 1981), a case in which the conduct of the trial court bears a striking resemblance to this case, we stated:
Ordinarily, trial judges have broad discretion in determining when trials will begin and how long they will continue on any given day. However, participating in the trial of a case as an attorney is both mentally and physically exhausting. Trial courts should keep this in mind and not require attorneys, over their objections, to continue beyond their limits. Nor should the court begin a case when there is not sufficient time, for any reason, to conclude it without pushing the attorneys beyond their physical capabilities. To do so deprives a defendant in a criminal case of his right to effective assistance of counsel... .
393 So.2d at 1342.
See also Thornton v. State, 369 So.2d 505 (Miss. 1979), to the same effect.
The Sixth Amendment to the Constitution of the United States and Section 26 of the Mississippi Constitution guarantee a defendant in a criminal case the right to the assistance of counsel. In order to give *912 this right full force and intended effect it has been repeatedly interpreted as the right to "effective counsel." McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); Stewart v. State, 229 So.2d 53 (Miss. 1969). Whether counsel is rendered ineffective through incompetence or exhaustion makes no difference in applying this constitutional standard.
While the evidence for the state is great, we nevertheless are of the opinion that due process of law necessitates a forum for the defendant to present his case within reasonable hours and under reasonable circumstances. Such was not afforded this defendant.
REVERSED AND REMANDED.
WALKER, and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.